*E-FILED 1/7/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AXIS IMEX, INC., | NO. C 08-3931 RS |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND MOTION TO STRIKE** |
| v. | |
| SUNSET BAY RATTAN, INC., et al. | |
| Defendants. | |

## I. INTRODUCTION

In this trademark and trade secret infringement action, defendant Sunset Bay Rattan, Inc. ("Sunset") moves to dismiss and to strike portions of the first amended complaint ("FAC") brought by plaintiff Axis Imex, Inc. ("Axis") pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure. Defendant Blair Rubel joins Sunset's motion to dismiss as it pertains to the claims against him. Prior to the hearing on these motions, Axis filed its second amended complaint ("SAC") in an attempt to address some of the alleged deficiencies in its FAC raised by defendants. For the purposes of this motion, the Court will use the SAC as the operative pleading. For the

reasons set forth below, the motions to dismiss will be granted in part and denied in part and the motion to strike will be granted in part and denied in part.[1]

## II. BACKGROUND

Axis alleges the following facts. Axis uses the federally registered trademark "storage sense" in connection with the production, sale, and distribution of a high quality set of five nesting boxes, which are decorative storage containers. The five nesting box design features matching color schemes between boxes and ribbons, and comprises a series of boxes that sit one within the other. These boxes are sold at stores throughout the United States.

In October 2005, Axis hired Rubel as an independent contractor to sell its products, and entered into an agent representative agreement whereby Rubel agreed to keep information he learned in the course of his employment confidential. He further agreed not to disclose information to Axis' competitors for six months following the termination of his employment. While associated with Axis, Rubel purportedly learned proprietary information regarding its nesting boxes and worked with a Chinese manufacturer, MultiTarget International Ltd. ("MultiTarget"), that produced the boxes. In December 2005, Axis terminated Rubel as its contractor.

At the beginning of 2006, Rubel began working for Sunset. Shortly thereafter, Sunset started designing nearly identical decorative storage containers under the trademark "Andrea baskets" that MutliTarget also manufactured. Sunset's boxes contain the five nesting box feature, have color matching schemes between the boxes and the ribbons, and share similar box and ribbon shape, size, and placement as those from Axis. Even though similar, Axis contends that Sunset's product is inferior both in terms of the quality of the cardboard used and the aesthetic look of the bows and seams.

In October 2007, MultiTarget mistakenly shipped Sunset's boxes with Axis' trademark on them to one of Axis' customers. Axis argues that Sunset made no effort to correct the error, and that the products sold under Axis' protected trademark. Axis claims that Sunset's use of similar boxes

---

[1] Both defendants include a reference to Rule 12(b)(3) of the Federal Rules of Civil Procedure in their motions. Neither motion, however, includes any arguments regarding dismissal for improper venue. Defendants represented at the hearing that any reference to Rule 12(b)(3) was filed in error.

1 causes confusion to members of the public.  Customers may believe mistakenly that inferior nesting
2 boxes are connected with Axis' trademark when, in fact, they are not.  Consequently, Axis filed its
3 SAC alleging: (1) unfair competition; (2) trademark infringement; (3) trade dress infringement; (4)
4 false advertising; (5) dilution; (6) breach of contract; (7) breach of the covenant of good faith and
5 fair dealing; (8) misappropriation of trade secrets; and (9) intentional interference with prospective
6 economic relationship.  Sunset brings its motion to dismiss claims one, three, four, five, eight, and
7 nine.  As noted previously, Rubel joins that motion to the extent of the claims against him (claims
8 one, three, eight, and nine).  Axis also seeks punitive damages in connection with certain claims.  As
9 a result, Sunset brings a motion to strike any reference to punitive damages in Axis' second prayer
10 for relief and in paragraphs in the operative pleading.

### III.  LEGAL STANDARD

A complaint may be dismissed as a matter of law pursuant to Rule 12(b)(6) for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).  For purposes of a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party.  *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

"A complaint should not be dismissed unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).  The court, however, "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Id*. at 754-55.  A court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  A court's review is limited to the face of the complaint, documents the complaint references, and matters about which the court may take judicial notice.  *Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996).

Motions to dismiss generally are viewed with disfavor and are to be granted rarely.  *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Leave to amend must be granted unless it is clear that amendments cannot cure the complaint's deficiencies.  *Lucas v. Dep't of Corr.*,

1  66 F.3d 245, 248 (9th Cir. 1995).  Nevertheless, when amendment would be futile, dismissal may be
2  ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

3  The Court may strike "from any pleading any insufficient defense or any redundant,
4  immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike generally
5  will not be granted unless it is clear that the matter to be stricken could not have any possible
6  bearing on the subject matter of the litigation.  *LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820,
7  830 (N.D. Cal. 1992).

## IV.  DISCUSSION

### A.  Motions to Dismiss

#### 1.  Claim Three: Trade Dress Infringement

Axis' third claim for relief against defendants is for trade dress infringement.  To make a claim for trade dress infringement under Section 43(a) of the Lanham Act, Axis must meet three basic elements: (1) distinctiveness; (2) non-functionality; and (3) likelihood of confusion. *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046-47 (9th Cir. 1998).  In line with the second prong, an affirmative defense to a trade dress infringement claim is that plaintiff's mark is functional. 15 U.S.C. § 1115(b)(8).  In other words, trade dress protection extends only to product features that are nonfunctional.  *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998).

Defendants contend that the trade dress claim should be dismissed because it fails to include a non-functional aspect to the boxes.  A product feature is functional if it is essential to the use or purpose of the item or if it affects its cost or quality.  *Id*.  The inquiry into whether a product is functional, however, is fact intensive with multiple factors for the Court to consider.[2]  At this stage of the proceedings, the Court is to assume that all allegations in Axis' SAC are true.  While the concept of nesting boxes could be functional, the number of nesting boxes, together with the other specifics alleged including the color matching scheme, between the box fabric and ribbons, and the shape, size, and placement of the bows and ribbons may be otherwise.  The facts going to that

---

[2] To determine whether a product is functional, a court should consider whether: (1) the design yields a utilitarian advantage; (2) alternative designs are available; (3) advertising touts the utilitarian advantages of the design; and (4) the particular design results from a comparatively simple or inexpensive method of manufacture.  *Id*.

4

functionality analysis cannot be resolved at the motion to dismiss stage but must await summary judgment or trial. *See Morton v. Rank Am., Inc.*, 812 F. Supp. 1062, 1069 (C.D. Cal. 1993) (holding that because functionality is a question of fact, it is not appropriate to dismiss a trade dress claim on a motion to dismiss).

Defendants also aver that Axis' trade dress infringement claim should be dismissed because Axis failed to attach pictures of the boxes to identify the trade dress with sufficient particularity. In Axis' SAC it attaches a picture of the five nesting boxes. Under Rule 8 of the Federal Rules of Civil Procedure, this newly attached picture in combination with the pleadings regarding the shape, size, and placement of the bows and ribbons, sufficiently identifies the trade dress with particularity to warrant denial of the motion to dismiss the trade dress claim. SAC ¶¶ 10-12.

2. Claim Five: Dilution

Axis' fifth claim for relief against Sunset is for dilution. While it is unclear whether Axis restricts its claim solely to the Lanham Act or also seeks to encompass California state law within its parameters, the analysis under each is the same. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008). In order to prove a violation, Axis must show that: (1) the mark is famous and distinctive; (2) Sunset is making use of the mark in commerce; (3) use began after the mark became famous; and (4) Sunset's use of the mark is likely to cause dilution by blurring or dilution by tarnishment. *Id*. (citing 15 U.S.C. § 1125(c)(1)).

Rather than challenge Axis' dilution claim under any of the prongs identified above, Sunset contends that Axis must show that its trade dress is likely to confuse customers and repeats its trade dress infringement arguments regarding functionality and particularity outlined above. As the Ninth Circuit recently made clear, neither federal law nor California state law requires a showing of likelihood of confusion to succeed on a dilution claim. *Id*. (citing *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004)). Sunset's functionality and particularity arguments similarly fail for the same reasons found lacking under the trade dress infringement claim set forth above. Axis adequately pleads its fifth claim in its SAC by stating that its trademark is famous and used in interstate commerce, and further that Sunset began shipping similar boxes after Axis' trademark became famous, with resulting dilution by blurring and tarnishment to that mark. SAC ¶¶ 55-61.

5

### 3. Claim Four: False Advertising

Axis' fourth claim for relief against Sunset is for false advertising. Representations constitute commercial advertising or promotion under Section 43(a) of the Lanham Act if they are: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; and (3) for the purpose of influencing consumers to buy defendant's goods or services. *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999). The statement need not be made in a "classic advertising campaign," and may consist of less formal types of "promotion." *Id.* Moreover, the representation must actually deceive or have the tendency to deceive a purchaser. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 244 (9th Cir. 1990).

Sunset maintains that Axis' false advertising claim should be dismissed because it fails to aver evidence of actual or likely deception to purchasers. Axis pleads that Sunset made a false representation about the origin of its nesting boxes by permitting them to be sold under Axis' label. SAC ¶ 48. These mislabeled boxes were sold to consumers who then associated Sunset's allegedly inferior nesting boxes with Axis' boxes. *Id.*, ¶¶ 49-50. While the facts may show nothing more than one mislabeled shipment, at this stage, the averment that the mislabeled boxes were commercially available for sale to customers who could be deceived as to their origin is sufficient to plead deception for purposes of maintaining the claim.

### 4. Claim Eight: Misappropriation of Trade Secrets

Axis' eighth claim for relief against defendants is for misappropriation of trade secrets. A trade secret may include a formula, pattern, compilation, device, method, and/or technique that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. Cal. Civ. Code § 3426.1(d). A trade secret also must be the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *Id.*

Defendants maintain that the alleged trade secret was known generally to the public as the boxes were free to be examined in stores. Axis acknowledges that the basic look of its product cannot constitute a trade secret since it is in the public domain. That said, the SAC specifically alleges that the technique for assembling the boxes, the manner of producing them, along with Axis' vendors for materials and assembly constitute a protectable trade secret not publicly available and

6

kept confidential. SAC ¶¶ 77, 79. At least at the notice pleading stage, such averments are sufficient to identify the trade secret in dispute.

Defendants additionally argue that Axis did not employ reasonable efforts to maintain the secrecy of its alleged trade secret as it was generally known to persons in the relevant industry and further that under the agent representative agreement Rubel was empowered to disclose any such trade secret six months after the termination of his employment with Axis. While it is undisputed that Rubel's non-disclosure obligations expired by agreement after six months, the construction of that agreement as it pertains to "trade secret" disclosure is not subject to resolution by motion to dismiss. Axis sufficiently alleges that it made the requisite efforts to maintain as confidential its identified trade secrets.

### 5. Claims One and Nine: Unfair Competition & Intentional Interference

The Uniform Trade Secrets Act ("UTSA") seeks uniformity in trade secret law throughout the United States, and was adopted by California without significant change in 1984. Cal. Civ. Code §§ 3426 *et seq*.; *DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal.4th 864, 874 (2003). California's UTSA provides that it "does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7(b). Once adopted under California law, the UTSA operates to preempt common law claims based on an underlying misappropriation of trade secrets. *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 936 (N.D. Cal. 2008) (citing *Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal.4th 215, 224 (2002)). A claim is subject to preemption if it arises from the same nucleus of facts underlying a claim for misappropriation of trade secrets. *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005). Preemption is not triggered where the facts in an independent claim are similar to, but distinct from, those underlying the misappropriation claim. *See id.*

Under this framework, Defendants argue that California's UTSA preempts Axis' unfair competition and intentional interference with prospective economic relationship claims because

those claims are based on an allegation of trade secret misappropriation.[3]  Axis contends that both theories of recovery are different from its trade secret misappropriation claim, in that only some of the relevant facts overlap.

A review of the SAC reveals that all events ultimately are grounded on two basic sets of facts: (1) Sunset's production of nesting boxes allegedly based on information obtained from Rubel, and (2) the October 2007 product label switch.  The SAC avers that Rubel learned proprietary information from Axis, went to work with Sunset, which thereafter produced nearly identical decorative containers eventually ending up in stores with an incorrect label. SAC ¶¶ 18-26.  As much as Axis would like to delink these facts from its trade secret misappropriation claim, they all relate to the same nucleus of facts underlying that claim.  If the "trade secret" facts are removed from claims one and nine, neither retains sufficient independent facts to survive.

As currently pled, therefore, the unfair competition claim (based either in common law or on Section 17200)[4] and the intentional interference with prospective economic relationship claim, are properly preempted under California's UTSA.  *See First Advantage*, 569 F. Supp. 2d at 936 (dismissing intentional interference claim with prejudice because it was preempted by California's UTSA); *Digital*, 370 F. Supp. 2d at 1035 (finding that unfair competition claim was preempted by California's UTSA); *AirDefense*, 2006 WL 2092053, at *4-5 (dismissing Section 17200 claim because the unfair business practice was a trade secret claim preempted by California's UTSA).

B.  Motion to Strike

 Sunset originally moved to strike the second prayer for relief and paragraphs eighty-two and ninety in the FAC.  The motion to strike now corresponds to the second prayer for relief and paragraphs eighty-two, eighty-three, ninety-one, and ninety-two after Axis added paragraphs eighty-three and ninety-two in its SAC to correct alleged deficiencies identified by defendants.  Those two

---

[3] It is unclear from Axis' SAC whether its unfair competition claim is based in common law or on Cal. Bus. & Prof. Code § 17200. Defendants make arguments for preemption under both possible grounds for relief.

[4] Defendants aver that Axis' claim for unfair competition under Cal. Bus. & Prof. Code § 17200 should be dismissed because the only conduct identified, one instance of a labeling and shipping mistake, is not sufficient to plead a business practice. In any event, as noted above, because the design of the boxes is the identified trade secret, a claim under Section 17200 based on a shipment of those boxes is preempted by California's UTSA. *See AirDefense, Inc. v. AirTight Networks, Inc.*, No. C 05-04615JF, 2006 WL 2092053, at *4-5 (N.D. Cal. July 26, 2006).

additional paragraphs proffer that Andrea Lieberman and Ben Lieberman, as the owners and officers of Sunset, authorized Sunset's alleged willful and malicious misappropriation of Axis' trade secrets. Because paragraphs eighty-two and eighty-three specifically plead who purportedly ratified the willful and malicious conduct committed by Sunset, Axis makes the requisite showing to seek punitive damages on that claim at this juncture.  In that paragraphs ninety-one and ninety-two accompany Axis' dismissed ninth claim, the motion to strike is granted as it relates to those two paragraphs.

## V. CONCLUSION

The motions to dismiss claims three (trade dress infringement), four (false advertising), five (dilution), and eight (trade secret misappropriation) are denied.  The motions to dismiss claims one (unfair competition based either in common law or on Cal. Bus. & Prof. Code § 17200) and nine (intentional interference with prospective economic relationship) are granted.  The claims are dismissed with prejudice as amendment would be futile.  Accordingly, defendants' motions to dismiss are granted in part and denied in part.

Sunset's motion to strike the second prayer for relief and paragraphs eighty-two and eighty-three are denied.  The motion to strike paragraphs ninety-one and ninety-two are granted.

IT IS SO ORDERED.

Dated: January 7, 2009

RICHARD SEEBORG
United States Magistrate Judge